**Marvin Neil STEVENS, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. PC–75–97.**

Court of Criminal Appeals of Oklahoma.

Sept. 17, 1975.

## ORDER AFFIRMING DENIAL OF POST CONVICTION RELIEF

This is an appeal from a denial of an application for Post Conviction Relief filed in the District Court, Oklahoma County, Case No. CRF–72–200. In that case, appellant, Marvin Neil Stevens, hereinafter referred to as defendant, was charged, tried and convicted of the offense of Burglary in the Second Degree, After Former Conviction of a Felony. In accordance with the verdict of the jury he was sentenced, on June 27, 1972, to serve a term of seventy (70) years' imprisonment. An appeal by the defendant's retained attorney was duly perfected from that conviction and a brief on his behalf was filed. That appeal, however, was dismissed by order of this Court upon a motion of the Attorney General for the reason that defendant escaped from the custody of the Department of Corrections. Following his capture and reincarceration, the defendant filed the instant application for Post Conviction Relief in the District Court, Oklahoma County.

Of the assignments of error which he presented to the court below in that application, the defendant has preserved three: (1) that the trial court committed reversi-

ble error by failing to sustain the defense motion to suppress the evidence; (2) that the prosecutor in his closing argument improperly commented on defendant's failure to put on any defense witnesses; and, (3) that he was denied due process of law at the second stage of his trial when his attorneys stipulated to the former convictions which were alleged by the prosecution.

The facts as they were presented at trial are these. On January 27, 1972, someone entered the home of Mr. and Mrs. Homer Russell by prying open a locked door and made off with a number of clothes, some furs, $3,200 in cash (which included 20 one dollar bills which were silver certificates and a five dollar bill which was a silver certificate with a red dot on it), and a large number of Kennedy half dollars. The Russells were away from home at the time. Mrs. Russell returned home at approximately 2:30 in the afternoon and discovered the crime. A neighbor of the Russells testified at trial that at approximately 1:30 on that same afternoon she saw a man, carrying a suitcase, run from the Russell house and drive away in a blue automobile. She testified that the defendant strongly resembled the man she had seen but she was unable to positively identify him.

Officer Troy Withey, of the Oklahoma City Police Department, testified that on the morning of January 28, 1972, in the course of investigating the burglary of the Russell home, he received a telephone call from an informer giving him certain information in connection with that burglary which caused him to go to the DeVille Motel in Oklahoma City. As the officer approached the motel, he saw the defendant whom he recognized coming out of room number 224.

As the police officer circled the block, the defendant drove off in a Ford automobile. He drove only a short distance before turning around and parking again at the motel. The officer testified that during the course of that excursion he saw the defendant cut through a service station driveway without stopping. When the defendant got

out of his car at the motel, the police officer advised him that he was under arrest for traffic violations. The defendant was charged with driving without a license and cutting through a service driveway in violation of city ordinance. A subsequent search of the defendant's person and a paper bag he held in his hand revealed a brown leather envelope of the type used to carry or store important papers which was stamped with the words "Valuable Documents." Inside the envelope was $2,550 in bills and coins. A contemporaneous search of the defendant's automobile uncovered a small bag containing a red seal five dollar bill and a large number of Kennedy half dollars. Later, after a search warrant was obtained, the defendant's motel room was also searched. That search uncovered a number of items of clothing. The Russells, at trial, identified the leather envelope and the other items seized as property stolen from their home on the 27th of January.

Officer Withey also testified that some months prior to trial, while he was waiting in the hall for the resumption of the defendant's preliminary hearing, the defendant approached him and offered the opinion that Mr. Russell was just as bad as he (the defendant) was because he had taken more money from the Russell home than Russell had reported to the police. He suggested that Russell must be evading the payment of income tax. He stated that the amount of money he actually took from the house was close to $6,000, and that that was the most money he had seen in a house.

The defendant called no witnesses.

The defendant first asserts that the court erred in overruling his motion to suppress for the reason that his original arrest was illegal and all evidence gathered as a direct consequence of that arrest was inadmissible. There was in this case a preliminary examination and two trials, the first being declared a mistrial. At the second trial upon the defense motion to suppress the evidence taken from the defendant, the judge announced that he intended to adopt the ruling

of the judge who tried the first case and overruled defendant's motion to suppress after a full hearing outside the presence of the jury. While the testimony of Officer Withey is at times inconsistent with his earlier testimony or testimony given at another hearing, the trial court in concluding the search was legal and the evidence admissible could have found these facts to be true: that Officer Withey was assigned to investigate the burglary of the Russell home, and had on the morning of January 28 interviewed the Russells about their missing property; that the officer knew who the defendant was, knew that he had prior convictions, and had, that morning, received from an informer certain information concerning the defendant and the burglary of the Russell home; that the officer did not feel the informer's tip constituted probable cause to arrest, and that when he went to defendant's motel he intended only to keep him under surveillance as part of an ongoing investigation; that the officer while keeping the defendant under surveillance observed him to commit a traffice offense; that the officer knew, or had reason to believe from an encounter with the defendant two weeks earlier, that the defendant had no license to drive his automobile (Tr. Motion to Suppress, pages 5 and 6); that the defendant removed from his own automobile a brown paper sack and placed it near the police unit before being ordered to pick it up and bring it inside the police car with him.

■ We are of the opinion that the evidence is sufficient for the trial court to have properly concluded that Officer Withey did not arrest the defendant for burglary on mere suspicion only but for misdemeanors which he observed to be committed in his presence. The defendant did in fact have no driver's license and was cited for cutting through a service station as well as driving without a valid State driver's license. That the defendant was at the time under surveillance for suspicion of committing burglary does not invalidate the misdemeanor arrest. See, *Shackelford v. State,* Okl.Cr., 473 P.2d 330 (1970).

The uncovering of evidence which resulted from that arrest divides into three separate searches: the search of defendant's person and the paper bag he carried with him to the patrol car; the search without a warrant of defendant's automobile; the search with a warrant of defendant's motel room.

■ The search of defendant's person conducted by Officer Withey in this case and the seizure from him of money and the leather container stamped "Valuable Documents" were reasonable and permissible under established Fourth Amendment law as being incident to an arrest. In *United States v. Robinson,* 414 U.S. 218, 94 S. Ct. 467, 38 L.Ed.2d 427 (1973), the Supreme Court of the United States held that a custodial arrest, even though it be for a traffic offense, of a suspect based upon probable cause is a reasonable intrusion under the Fourth Amendment and that consequently a search incident to such an arrest requires no additional justification. However, under the facts of this case Officer Withey's search of the defendant for the purpose of disarming him and protecting the officer would have been upheld under the decisions prior to *United States v. Robinson,* supra.

■ The warrantless search of defendant's automobile which followed could not be justified as a protective search for weapons incident to the traffic arrest. We are of the opinion, however, that once the fruits of the burglary of the Russell home were discovered on the person of the defendant, the contemporaneous search of his automobile was reasonable and permissible under the Fourth Amendment. There was reason to believe that this automobile was employed in the commission of the crime and there was without a doubt probable cause to believe that the automobile contained further fruits of the crime. Officer Withey's patrol unit was the only one at

the scene; the car was parked at a motel where the defendant had registered under an assumed name; the possibility of accomplices in the vicinity had not been ruled out; and, the automobile was moveable. All those things combined to create the kind of exigent circumstances which permit a police officer, upon probable cause, to search a vehicle without a warrant. See, *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

 We are of the further opinion that the search of defendant's motel room was permissible, although the affidavit for the search warrant had a clear defect. That affidavit alleges these facts:

"On 1–28–72 the above affiant arrested one Marvin Neal (sic) Stevens on a traffic charges, in his possession was a brown bag containing $2,550.00 cash this bag and money was then positively identified by the victim of the above burglary. That the affiant observed Marvin Neal (sic) Stevens come from the above motel room and was arrested in a 1971 Torino white/blue bearing 71 Okla tag YD 7692 and upon further investigation it was determined that Stevens had registered into this room on 1–24–72 under assumed name of James Bryant and the same tag was writton (sic) the motel register. Affiant received information that the rest of the property from this burglary was in the room, that the reliable informant had observed this property in this room on 1–27–72 the date of the burglary."

The defendant correctly asserts that the reference to the reliable informant is insufficient under the rule of such cases as *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) and *Leonard v. State,* Okl.Cr., 453 P.2d 257 (1969), which hold that if an affidavit is based upon information presented to the affiant by an informer the affiant must state on the face of that affidavit that said informer is credible and reliable and upon what facts he bases this judgment of credibility and reliability. We are of the opinion, however, that the obvious defect on the face of the instant affidavit does not invalidate the warrant which issued upon it for the reason that the facts which the affiant-officer affirms of his own knowledge constitute sufficient probable cause to issue a warrant. Here the reference to the informer is mere surplusage. If after defective allegations are expunged from the face of an affidavit the remaining assertions are sufficient to constitute probable cause to issue a warrant, the affidavit will not be held insufficient nor the warrant invalid. cf. *United States v. Hunt,* 496 F.2d 888 (5th Cir. 1974).

We conclude that the evidence seized from this defendant, from his vehicle and from his motel room was properly admit·ed into evidence against him at his trial.

 Defendant's second assignment of error in this appeal is that the prosecutor's comment on his failure to put on defense witnesses was highly prejudicial to him. The specific comment complained of appears on pages 135 and 136 of the trial transcript:

"I will repeat this, that the State can subpoena witnesses and put them on the witness stand. At the same time the State has that right, the right also goes to the Defendant, that the Defendant has subpoena power to subpoena anybody they want to and put any testimony they want to on the witness stand. They have the same rights and the same powers as the State of Oklahoma."

The defense attorney immediately voiced his objection to the statement for the reason that it constituted a comment on the failure of the defendant to take the stand.

We do not find that the statement above falls within the limitative provisions of *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The statement complained of does not tend to

focus any more attention on the defendant's failure to take the stand than the statement that the evidence is "uncontroverted" or "uncontradicted." We have repeatedly refused to hold such comments impermissible. See, *Rodgers v. State,* Okl.Cr., 510 P.2d 992 (1973); *Montgomery v. State,* Okl.Cr., 447 P.2d 469 (1968); *Watts v. State,* Okl. Cr., 487 P.2d 981 (1971).

■ Defendant's final assignment of error alleges that he was denied due process during the second stage of his trial. This is so, he asserts, because he was denied: the effective assistance of counsel; the right to confront the State's witnesses; the right to remain silent; and, the right to stand on a plea of not guilty and require the State to prove his guilt beyond a reasonable doubt. The heart of defendant's complaint about the second stage of his trial is that his defense attorney agreed with the prosecution to stipulate that the certified copies of the judgment and sentence in cases number 27838, 29939, 30021, 30022, and CRF–70–763, are true and correct copies of the original judgment and sentence entered in each case, and that the Marvin Neil Stevens named in each as defendant is the same Marvin Neil Stevens on trial in this case; that in each case defendant was represented by an attorney; and, that each conviction was final. Defendant makes no assertion that he was prejudiced by that stipulation for the reason one of those five convictions was not in fact sustained by him, was uncounseled, or was otherwise void. We are unpersuaded by his argument that such a stipulation was in effect an involuntary plea of guilty made for him by a third person. Nor can we agree, as defendant urges, that a stipulation by defense counsel to a group of five prior convictions is evidence that he is ineffective or incompetent trial counsel. Such a decision may, in a case such as this one, constitute sound trial strategy.

For the above and foregoing reasons the order of the District Court appealed from denying Marvin Neil Stevens' application for Post Conviction Relief in District Court Case No. CRF–72–200, is *affirmed.*

So ordered.

Witness our hands, and the Seal of this Court, this 17th day of September, 1975.