**STATE of Utah, Plaintiff and Respondent,**

v.

**Darren Neil GRUEBER, Defendant and Appellant.**

No. 870532–CA.

Court of Appeals of Utah.

June 2, 1989.

Rehearing Denied July 7, 1989.

---

**9.** *Compare* Utah Code Ann. § 63–46b–16(4)(h)(i) (1988) *with* Utah Admin R. 475–10d–3(2) (1987–88).

Richard G. Uday, Salt Lake City, for defendant and appellant.

R. Paul Van Dam and Charlene Barlow, Salt Lake City, for plaintiff and respondent.

Before DAVIDSON, BENCH and BILLINGS, JJ.

## OPINION

BILLINGS, Judge:

Defendant Darren Neil Grueber ("Grueber") was convicted of aggravated assault, a third degree felony, in violation of Utah Code Ann. § 76-5-103 (1978). Grueber appeals from his conviction claiming: (1) a shotgun seized during a warrantless search should have been suppressed; (2) he was prejudiced by the State's failure to produce requested information during discovery; (3) he was denied effective assistance of counsel; and (4) there was insufficient evidence to support his conviction. We affirm.

## FACTS

On August 13, 1986, Michael Wade was driving his automobile southbound onto the I-15 on-ramp near 13th South in Salt Lake City, Utah. A green and white Ford van pulled up beside Mr. Wade in the right-hand lane of the on-ramp. The driver of the van yelled at Mr. Wade for not driving fast enough and attempted to force Mr. Wade's automobile off the road. The two vehicles proceeded side by side up the ramp for a sufficient length of time for Mr. Wade to view the driver of the van.

After merging onto the interstate, Mr. Wade was still traveling next to the green and white van. At this time, he observed a woman passenger in the van pointing a shotgun at him. Mr. Wade quickly applied his brakes and positioned his automobile directly behind the green and white van. From this vantage point, Mr. Wade observed the van's license plate number (674 ALH) and other identifiable features. As the vehicles approached the I-80 interchange, Mr. Wade veered to the far left lane and fled toward the I-80 entrance. At this time, Mr. Wade observed a shotgun sticking out of the driver's window of the green and white van, observed a large tattoo on the driver's upper arm and heard shotgun blasts. From these events, Mr. Wade concluded the driver of the van had fired two shots at his automobile. The shotgun blasts neither damaged his automobile nor injured the occupants.

The green and white van did not follow Mr. Wade as he entered the I-80 interchange. Mr. Wade exited I-80 and went directly to the South Salt Lake Police Department. He reported the incident and his observations to the police, including the van's license plate number. A registration check disclosed Carolyn Ray as the owner of the van.

On October 14, 1986, Mr. Wade viewed a number of photos from which he positively identified Grueber as the person who fired the shotgun at him.

In a separate incident, on November 7, 1986, Officer Scott Robinson of the Murray City Police Department was informed the occupants of a green and white van, license plate number 674 ALH, had attempted to sell a welder which the police had reason to believe had been stolen during a recent burglary at the Murray City Golf Course. Officer Robinson requested a registration check which again revealed Carolyn Ray as the owner of the van. Officer Robinson then proceeded to the address listed on the registration, and waited for the van's arrival. When the van entered the driveway, Officer Robinson exited his car and identified himself as a police officer. As he approached the van, Officer Robinson observed the driver get out of the van and run to the back of the house. Officer Robinson followed the driver, but his pursuit was impeded by a dog tied to the side of the house. The driver was later apprehended by Officer Robinson and identified as the defendant, Grueber.

Officer Robinson returned to the van after encountering the dog and observed Carolyn Ray, several children, and an adult male exiting the van. Through the windows of the van, Officer Robinson observed a welder matching the description of the stolen welder. Soon thereafter, a representative of the golf course arrived and positively identified the welder in the van as the welder stolen from the Murray City Golf Course. Officer Robinson then entered the van and attempted to locate the serial number on the welder. Once inside, Officer Robinson saw a shotgun with a

pistol grip situated near the driver's seat, partially covered but in plain view.

Officer Robinson ran a check for warrants on Grueber. The check showed a warrant for aggravated assault from Sandy City and another warrant from Salt Lake City. Officer Robinson seized the welder, the shotgun, and some Halloween masks from the van and arrested Grueber.

A hearing was held prior to trial on Grueber's motion to suppress the shotgun from evidence and Grueber renewed his objection at trial. Officer Robinson articulated three reasons for seizing the shotgun: (1) the gun was present with other stolen property; (2) the driver, with an outstanding warrant for aggravated assault, had fled the scene and thus the officer believed the gun could have been used in the prior crime; (3) the Halloween masks were present with the weapon, indicating a criminal purpose for the presence of the gun. The trial court denied Grueber's motion, finding Grueber did not have standing to object to the seizure of the gun and that the seizure was proper.

At trial, Officer Richard Mattingly, a witness for the State, utilized notes during his direct examination which had not been provided to the prosecution, and consequently, had not been furnished to defense counsel, though the notes were covered by a defense discovery request. Defendant filed a motion for a mistrial claiming he was prejudiced by the late disclosure of these police reports and notes. The trial court allowed defense counsel additional time to examine the notes and prepare for his cross-examination of Officer Mattingly. As a result, the trial was recessed for 24 hours. The court also required the State to recall any prior witnesses, including Mr. Wade, if defense counsel wished to re-examine the witnesses in light of the newly discovered notes. However, the court denied Grueber's motion for a mistrial finding: (1) the discovery violation was discovered prior to the conclusion of the State's case-in-chief and therefore, any prejudice was cured; (2) the information in the notes was inculpatory in nature and since neither party obtained the notes prior to trial, their unavail-

ability was probably, on the whole, beneficial to Grueber; and (3) any possible prejudice would be prevented or mitigated by giving defense counsel adequate time to prepare for and incorporate into their trial strategy any new information.

Subsequently, Grueber was convicted of aggravated assault under Utah Code Ann. § 76-5-103(1)(b) (1978).

## SUPPRESSION OF THE SHOTGUN

Grueber argues the shotgun seized from the green and white van should not have been allowed into evidence. Although Grueber concedes the shotgun was in plain view when seized, he claims the shotgun was not clearly incriminating and the officer did not have probable cause to believe it was connected to any criminal activity.

The State argues Grueber had no expectation of privacy in the van or the gun, and thus he does not have standing to object to the seizure of the gun. The State further argues that even if Grueber could object to the seizure, the police officer had probable cause to seize the gun since it was clearly incriminating. We do not reach the issue of whether the gun found in plain view during an otherwise proper search was properly seized as clearly incriminating since we agree that Grueber did not have an expectation of privacy in the van or the gun, and thus cannot complain of the seizure.

The concept of standing is not "theoretically separate" under the fourth amendment. *Rakas v. Illinois*, 439 U.S. 128, 139, 99 S.Ct. 421, 428, 58 L.Ed.2d 387 (1978). The proper test, which implicitly incorporates the concept of standing, is whether the person who claims the protection of the fourth amendment "has a legitimate expectation of privacy in the invaded place." *Id.* at 143, 99 S.Ct. at 430. *See also State v. Constantino*, 732 P.2d 125, 126–27 (Utah 1987); *State v. Larocco*, 742 P.2d 89, 91 (Utah Ct.App.1987).

The United States Supreme Court has repeatedly recognized that an expectation of privacy in an automobile is different from an expectation of privacy in one's

residence. "We have on numerous occasions pointed out that cars are not to be treated identically with houses or [a]partments for [f]ourth [a]mendment purposes." *Rakas,* 439 U.S. at 148, 99 S.Ct. at 433 (citing *United States v. Chadwick,* 433 U.S. 1, 12, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977); *United States v. Martinez–Fuerte,* 428 U.S. 543, 561, 96 S.Ct. 3074, 3084, 49 L.Ed.2d 1116 (1976); *Cardwell v. Lewis,* 417 U.S. 583, 590, 94 S.Ct. 2464, 2469, 41 L.Ed.2d 325 (1974)).

■ The legitimate expectation of privacy test is not a "bright line" test but is fact sensitive. Therefore, in order to determine whether Grueber had a legitimate expectation of privacy in the van or the gun, we compare the facts before us with the facts in other similar cases.

■ The State relies on, among others, the following cases to assert Grueber had no reasonable expectation of privacy in the green and white van at the time the shotgun was seized from it: *Rakas; Constantino; State v. Valdez,* 689 P.2d 1334 (Utah 1984); *State v. Purcell,* 586 P.2d 441 (Utah 1978).

In *Rakas,* police stopped a van they suspected to be the get-away car in a recent robbery. The defendants were passengers in the car which the owner was driving. The police searched the car and found a box of rifle shells in the glove compartment and a sawed-off rifle under the front passenger seat. Defendants were arrested. The Court held the defendants, as occupants of the van, had neither a proprietary nor a possessory interest in the automobile, nor an interest in the property seized. 439 U.S. at 148, 99 S.Ct. at 433. Although the defendants were in the car with the permission of the owner, the Court found they did not have a legitimate expectation of privacy in the particular areas of the automobile which the police searched. *Id.*

The Utah Supreme Court has adopted the *Rakas* analysis in at least three of its decisions. In *State v. Constantino,* defendant was convicted of possession of a controlled substance with intent to distribute after an inventory search of the car he was driving disclosed two plastic bags containing marijuana. A police investigation revealed the car that defendant was driving was registered to another person. Defendant did not claim he had driven the car with the permission of the owner or that he had borrowed the car under circumstances that would imply permissive use. 732 P.2d at 127. The court held that "[a]bsent claimed right to possession, [defendant] could not assert any expectation of privacy in the items seized and had no standing to object to the search." *Id.*

In *State v. Valdez,* defendant was arrested for producing a driver's license with a false name following a stop by police officers who noticed that defendant's car had no front license plate. Defendant told police officers that he did not own the car. The officers searched the car without obtaining a warrant and discovered an attache case in the trunk which was closed but contained a check that partially protruded from the case. The officers opened the case and discovered certain items of false identification. Because defendant conceded that he did not own the car or attache case containing the evidence complained of, the Utah Supreme Court held that he did not have any legitimate expectation of privacy in the effects searched. 689 P.2d at 1335. *Accord State v. Purcell,* 586 P.2d at 443.

Grueber argues the following cases support his claim that he did have a reasonable expectation of privacy in the van: *United States v. Jeffers,* 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951); *State v. Larocco,* 742 P.2d 89 (Utah Ct.App.1987); *In re J.R.M.,* 487 S.W.2d 502 (Mo.1972) (en banc).

In *United States v. Jeffers,* the Supreme Court held the defendant had a reasonable expectation of privacy in his aunt's hotel room where the defendant had been given a key to the hotel room, had the occupant's permission to use the room at will, and often entered the room for various purposes. 342 U.S. at 50–52, 72 S.Ct. at 94–96.

In *State v. Larocco,* this court held the defendant had standing to challenge the legality of the search of a van which the police subsequently determined was stolen.

At the time of the search, the van was registered in the defendant's name, was parked in front of his home, and had been used exclusively by the defendant as the asserted owner and by no one else for an extended period of time. 742 P.2d at 92.

Grueber also relies on *In re J.R.M.*, wherein the Missouri Supreme Court held that a juvenile had standing to challenge the warrantless search of an automobile even though he was not the record owner of the van, and was not on the premises at the time of the search. The evidence showed the juvenile had his own key to the car, had the right to use the car at any time, regularly drove the car to school, used the car as much as he would have if the title had been in his name, was included as an insured driver under the automobile insurance policy on the car, and lived with his parents where the car was kept. 487 S.W.2d at 509.

We believe the facts presented in this case are closer to the cases cited by the State where courts have found a nonowner had no reasonable expectation of privacy in an automobile. In the instant case, the seized shotgun was owned by and registered to defendant's girlfriend, Carolyn Ray. Similarly, Ms. Ray was the registered owner of the green and white van. Although the van was parked in front of Ms. Ray's home at the time of the search and defendant claimed he lived with Ms. Ray, defendant was not in the van when it was searched and the gun seized. At the time the gun was seized, Grueber stated he did not even know the gun was in the van.

There is no evidence in the record establishing Grueber had Ms. Ray's permission to use either the van or the gun at will, had a key to the van, or even how often he had used either the van or the gun in the past. Grueber cites no facts which other courts have found relevant to demonstrate a nonowner had a possessory or proprietary interest in an automobile. Grueber merely relies on his alleged live-in relationship with Ms. Ray to claim a privacy interest in the van and gun. Even assuming the existence of such a relationship, under the facts in the record, we find Grueber did not have a legitimate expectation of privacy in the van or the seized shotgun.

## DISCOVERY VIOLATION

Grueber next argues the trial court erred in denying his motion for a mistrial after Officer Mattingly relied on reports and notes during his direct examination which had been requested by, but not furnished to, defense counsel during discovery. Specifically, Grueber claims he was prejudiced because had he known the contents of the additional reports he would not have impeached Mr. Wade on cross-examination as to certain facts testified to but not appearing in any police report. These facts included that the shotgun used in the alleged assault did not have a stock but had a strap, and that there was a "Harley–Davidson" sticker on the back of the van driven by Grueber.

■ A trial court's ruling on a motion for mistrial should not be upset unless it clearly appears the trial court abused its discretion. *See State v. Speer*, 750 P.2d 186, 190 (Utah 1988); *State v. Peterson*, 560 P.2d 1387, 1390 (Utah 1977); *State v. Hodges*, 30 Utah 2d 367, 517 P.2d 1322, 1324 (1974). *See also State v. Thompson*, 751 P.2d 805, 818 (Utah Ct.App.1988).

■ Utah Code Ann. § 77–35–30(a) (1982) provides "[a]ny error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded." In *State v. Knight*, 734 P.2d 913 (Utah 1987), the Utah Supreme Court stated,

> [w]e have ruled in several cases that the Rule 30 phrase "affect the substantial rights of a party" means that an error warrants reversal "only if a review of the record persuades the court that without the error there was '*a reasonable likelihood of a more favorable result* for the defendant.'"

*Id.* at 919 (quoting *State v. Fontana*, 680 P.2d 1042, 1048 (Utah 1984) (emphasis in original)). The *Knight* court provided further guidance by defining what is meant by a "reasonable likelihood." "For an error to require reversal, the likelihood of a differ-

ent outcome must be sufficiently high to undermine confidence in the verdict." 734 P.2d at 920.

We are not convinced the impeachment of Mr. Wade on minor questions concerning the identification of the gun and van because such information was not contained in Officer Mattingly's partial report affected the "substantial rights" of the defendant. We conclude there is not a reasonable likelihood the trial outcome would have been more favorable to Grueber if Grueber had received the materials used by Officer Mattingly, prior to trial, and had therefore, conducted his cross-examination of Mr. Wade in a different manner. *Cf. State v. Schreuder*, 712 P.2d 264, 276 (Utah 1985); *State v. Carter*, 707 P.2d 656, 661–62 (Utah 1985).

## INEFFECTIVE ASSISTANCE OF COUNSEL

During direct examination, Grueber was asked by his attorney if he had been convicted of a felony. Grueber responded that he had been convicted of distribution of marijuana in 1980. Upon further questioning, Grueber also admitted that in 1978, at the age of 17, he had been convicted of joy-riding, a misdemeanor. Grueber claims these convictions were properly excludable under Utah R.Evid. 609 and thus his counsel's performance was constitutionally defective.

In order to establish ineffective assistance of counsel, Grueber must meet the elements of a two-prong test.

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the [s]ixth [a]mendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The Utah Supreme Court adopted the two-prong *Strickland* standard in *State v. Frame*, 723 P.2d 401, 405 (Utah 1986).

■ The mere fact that defendant received an unfavorable result does not give rise to the conclusion that defendant received ineffective assistance of counsel. *See, e.g., State v. Buel*, 700 P.2d 701, 703 (Utah 1985). If the defendant fails to make the required showing of either deficient performance on counsel's part or of sufficient prejudice as a result of counsel's error, then defendant's ineffectiveness claim is defeated. *See, e.g., State v. Geary*, 707 P.2d 645, 646 (Utah 1985).

To establish prejudice,

[i]t is not enough to claim that the alleged errors had some conceivable effect on the outcome or could have had a prejudicial effect on the fact finders. To be found sufficiently prejudicial, defendant must affirmatively show that a "reasonable probability" exists that, but for counsel's error, the result would have been different. We have defined "reasonable probability" as that sufficient to undermine confidence in the reliability of the verdict.

*Frame*, 723 P.2d at 405. *Accord State v. Archuleta*, 747 P.2d 1019, 1023 (Utah 1987).

■ In the instant case, we need not address whether counsel's questioning of Grueber about his prior convictions was deficient performance,[1] as we find Grueber has not met his burden of showing that the introduction of his prior convictions into evidence was prejudicial. In effect, Grueber has failed to show that but for his counsel's alleged deficiencies, there exists any "reasonable probability" that the jury's verdict would have been different.

Moreover, this case is distinguishable from *State v. Gentry*, 747 P.2d 1032 (Utah 1987), where the court found that counsel's

---

**1.** Counsel did make a successful motion in limine to exclude testimony as to an alleged assault with a machete committed by defendant.

This is some evidence that counsel's choice not to dispute the admissibility of the less prejudicial convictions was merely trial strategy.

failure to exclude prior convictions was reversible error. In *Gentry*, the defendant did not take the stand because of the admission of his prior convictions. The *Gentry* court was persuaded there was a reasonable likelihood that the result would have been different because the court could only speculate as to what defendant's testimony might have been and its effect upon the outcome of the trial. *Id.* at 1038. In the instant case, Grueber took the stand and the evidence received during trial against him was convincing independent of the admission of prior convictions that had attenuated relevance to the crime charged.

Rather, this case is comparable to *Hoeck v. Municipality of Anchorage*, 698 P.2d 666 (Alaska Ct.App.1985), where defendant's trial counsel conceded that defendant had five prior "driving while intoxicated" convictions and four prior "driving with license revoked" convictions. The court held that such a concession did not amount to ineffective assistance of counsel. *Id.* at 668. *Accord Stevens v. State*, 540 P.2d 1199 (Okla.Crim.App.1975).

Because Grueber failed to show the introduction into evidence of his prior convictions was prejudicial to the outcome of the trial, Grueber's claim of ineffective assistance of counsel must fail.

## SUFFICIENCY OF THE EVIDENCE

Grueber's final claim is that insufficient evidence existed to support his aggravated assault conviction. We disagree.

In considering a sufficiency of the evidence question, we will review the evidence and all inferences reasonably drawn from it in the light most favorable to the jury verdict. *State v. Petree*, 659 P.2d 443, 444 (Utah 1983). We will reverse a jury conviction for insufficient evidence only when that evidence "is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted." *Id. See also State v. Garcia*, 744 P.2d 1029, 1030 (Utah Ct.App.1987).

Grueber does not claim there was insufficient evidence to support the elements of aggravated assault but simply claims the assault victim, Mr. Wade, was not credible. This court will not second guess the determinations of the fact finder as to witness credibility, and based on the record before us the evidence is not " 'sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he [or she] was convicted.' " *State v. Verde*, 770 P.2d 116, 124 (Utah 1989) (quoting *State v. Petree*, 659 P.2d at 444). Thus, we find that there was sufficient evidence upon which to base Grueber's aggravated assault conviction.

## CONCLUSION

In summary, we find the trial court properly denied Grueber's motion to suppress the shotgun from evidence because Grueber did not have a legitimate expectation of privacy in the van searched or the gun seized. We further find Grueber was not prejudiced by the State's discovery violation since there is not a reasonable likelihood that the trial outcome would have been different in the absence of the violation. Additionally, Grueber did not receive ineffective assistance of counsel due to counsel's introduction of prior convictions because Grueber failed to show this prejudiced the outcome of his trial. Finally, we find there was sufficient evidence to support Grueber's assault conviction.

Based upon the foregoing, we affirm.

DAVIDSON and BENCH, JJ., concur.