**Michael Donald ROBERTS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–88–566.**

Court of Criminal Appeals of Oklahoma.

Jan. 12, 1994.

Irven R. Box, Diane Clowdus, Box & Clowdus, Oklahoma City, Trial and Appellate Counsel, for appellant.

Robert Macy, Dist. Atty., Don Deason, Asst. Dist. Atty., Oklahoma City, Trial Counsel, Robert H. Henry, Atty. Gen., Carol Price Dillingham, Asst. Atty. Gen., Oklahoma City, Appellate Counsel, for appellee.

### OPINION

LUMPKIN, Presiding Judge:

Appellant Michael Donald Roberts was tried by jury and convicted of Murder in the First Degree (21 O.S.Supp.1982, § 701.7) and Burglary in the First Degree, After Former Conviction of Two or More Felonies (21 O.S. 1981, § 1431 and 21 O.S.Supp.1985, § 51), Case No. CRF–88–677, in the District Court of Oklahoma County. The jury found the existence of three aggravating circumstances—that Appellant committed the murder to avoid arrest and prosecution (21 O.S. 1981, § 701.12(5)); he was previously convicted of a felony involving the use or threat of violence to the person (21 O.S.1981, § 701.-12(1)); and there was a probability Appellant would commit criminal acts of violence that would constitute a continuing threat to society (21 O.S.1981, § 701.12(7))—and recommended punishment of death for murder and three hundred-fifty (350) years for the burglary after former convictions. The trial court sentenced accordingly. From this judgment and sentence Appellant has perfected this appeal. We affirm.

Eighty-year-old Lula Mae Brooks of Oklahoma City was found dead on her living room floor on January 16, 1988. There were signs of forced entry into the house. She had been stabbed in the head and neck, and her throat was slit; she drowned in her own blood. At the scene, authorities found a knife and photographed shoeprints which showed a diamond pattern consistent with an athletic-type shoe.

That same month, authorities arrested a juvenile who was a suspect in numerous burglaries committed in the victim's neighborhood. The juvenile implicated Appellant in certain property crimes. Authorities arrested Appellant after spotting him as a passenger in a vehicle during a routine traffic stop. A computer check revealed Appellant was wanted on several outstanding traffic warrants. A knife was taken from his person

during the arrest. En route to jail, Appellant volunteered his knowledge of the victim, a neighbor he had known for years. This volunteered information was not the result of questioning by the arresting officer.

During booking, authorities took Appellant's athletic shoes and submitted the shoes, laces and knife to forensics, along with blood samples from Appellant and blood type from the victim. Appellant's knife and shoes showed presence of blood, but authorities could not determine further blood characteristics. The pattern on the bottom of Appellant's shoes was consistent with the pattern found at the murder scene.

Appellant was interviewed by detectives, and confessed to a series of robberies; this confession was videotaped without his knowledge. Appellant also talked about the murder, eventually giving three versions of what had transpired. He first said he entered the house the day after the murder, noticing the general disarray inside the house and a chalk outline of the body. However, authorities had not used a chalk outline in this case. In the second version, he said he was walking to the store on January 16, 1988, when he heard a noise inside the decedent's house. He entered to see her lying on the floor, with blood gushing from her throat. He became scared and ran out of the house. He feared some blood might have got on his jeans.

In the final version, he admitted he decided to burglarize the victim. He approached the house to find the front door partially open, and Ms. Brooks approaching him with a knife, saying she had been robbed and did not want it to happen again. He said he grabbed the hand holding the knife, while at the same time getting out his own knife and stabbing her in the neck. As the blood gushed from her neck, he helped her to the bathroom to attend to the wound. He returned to the living room and saw two purses. At some point, he said the decedent approached him from behind. He threw her down on the floor, put a covering over her

head and slit her throat after she requested him to "finish the job."

Appellant raises seven propositions in his appeal brief: two dealing with the guilt-innocence stage, four dealing with the punishment stage and one urging cumulative error.[1]

## I. GUILT–INNOCENCE ISSUES

■ In his fourth proposition of error, Appellant claims his arrest was illegal and the resulting evidence, including confessions and physical evidence taken from him during booking, should have been suppressed. We disagree.

■ Appellant does not challenge the legality of the stop itself, and we do not find it improper. Appellant admits police had reason to believe he was a suspect in numerous burglaries, based on statements given them by the juvenile accomplice. That alone would be grounds to an investigatory stop and brief detention. *See Davis v. State*, 792 P.2d 76, 84 (Okl.Cr.1990); *Jones v. State*, 718 P.2d 712, 714 (Okl.Cr.1986). However, it is clear police also knew Appellant had outstanding traffic warrants for his arrest. Police were entitled to arrest Appellant based on those.

■ Appellant essentially complains that his arrest should be illegal because he was taken in on charges other than the murder or the burglaries. The fact Appellant may have been a suspect in more serious crimes does not invalidate his arrest on lesser charges. *See Stevens v. State*, 540 P.2d 1199, 1202 (Okl.Cr.1975).

He then urges this Court to suppress his statements and other evidence seized from him at the police station based on the illegality of his arrest. His counsel did not contest the legality or the propriety of the *Miranda* warnings at oral argument, admitting they were properly given. We have determined the arrest was not illegal. Therefore, we find no merit to his assertion this evidence constituted fruits of the poisonous tree.

---

1. We commented at oral argument, but again wish to compliment Appellant's counsel for thoroughly examining the record and gleaning only issues which were arguably viable when viewed

in connection with the record, then focusing on those issues for which a viable argument could be made.

In his sixth proposition of error, Appellant complains of several remarks by the prosecutor which he claims deprived him of a fair trial. He cites an instance in opening statement where the prosecutor exhorted the jury to take evidence presented during the trial seriously, because "it doesn't get any more serious than this." We agree with the prosecutor; there is no trial more serious than a murder trial in which the death penalty is being sought. We see nothing improper about urging the jurors to take their jobs seriously.

He also complains of comments during first-stage closing argument, to which objections were made. Following the first objection, the trial court repeated his observation that he had instructed the jury, closing arguments were presented for purposes of persuasion only and were not evidence.

The most serious comment came when the prosecutor said "the murder was done by the Defendant and we proved that beyond any doubt, any reasonable doubt. He is the man that did it." The trial court overruled the objection to the comment. This was error, but it does not warrant reversal. Appellant's counsel acknowledged at oral argument the remark, in the absence of other errors, would not mandate reversal, and we commend counsel for her candor.

This Court has recognized that "in the heat of argument, counsel do occasionally make remarks that are not justified by the testimony, and which are, or may be prejudicial to the accused." *Romano v. State*, 847 P.2d 368, 380 (Okl.Cr.1993) (quoting *United States v. Young*, 470 U.S. 1, 10, 105 S.Ct. 1038, 1043, 84 L.Ed.2d 1 (1985)). However, we are loathe to overturn a conviction on the basis of prosecutor's comments standing alone, "for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *Id.* Taken in context, we note the prosecutor's colleague, in his first closing statement, reminded the jury that the comments were not evidence, and the jury should not take any comments as being personal opinions of the prosecutor. This isolated statement when taken together with the preliminary comments, the judge's admonition and instructions, and the closing argument as a whole, did not prejudice the Appellant's rights to a fair trial.

Likewise, Appellant cites examples in the second-stage closing which he feels were improper. The trial court sustained his objection on one and properly admonished the jury. This cures all but fundamental error. *Nguyen v. State*, 769 P.2d 167, 172 (Okl.Cr. 1988) *cert. denied* 492 U.S. 925, 109 S.Ct. 3264, 106 L.Ed.2d 609 (1989), *reh'g denied* 492 U.S. 938, 110 S.Ct. 27, 106 L.Ed.2d 639 (1989); *Irvin v. State*, 617 P.2d 588, 599 (Okl.Cr.1980).

We have reviewed the entire closing argument of both the prosecution and Appellant's attorney, and find that the other statements were either proper comments on the evidence or do not rise to the level of fundamental error. Of comments that were arguably improper in either stage of the trial, the trial court's error in failing to sustain objections to arguably improper comments and admonish the jury did not result in a miscarriage of justice or constitute a substantial violation of a constitutional or statutory right. 20 O.S. 1991, § 3001.1.

## II. ISSUES RELATING TO PUNISHMENT

For his first assignment of error, Appellant claims the prosecution improperly withheld exculpatory evidence in the second stage of his trial. The State, as one of its aggravating circumstances, alleged Appellant would commit criminal acts of violence that would constitute a continuing threat to society. In its notice of evidence to be offered in support of that aggravating circumstance, the State listed twenty (20) specific acts involving rape and burglary, based on a videotaped confession Appellant gave police. At trial, the State called eleven (11) of those victims to testify, essentially corroborating the taped confession.

Appellant contends that, after trial was over, his attorney was approached by a member of the Oklahoma City Police Department, who told him the district attorney's office knew in advance of trial some of the remain-

ing victims would refuse to testify. He claims he was unaware of that fact during the trial. He also claims some of the victims, including some who testified, had given information to authorities indicating their attacker was white. Appellant is an African–American. He claims this is a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

We initially note the only allegation of these revelations is in Appellant's brief. Appellant claims in the brief he planned to file a motion for new trial based on newly discovered evidence; however, the record is devoid of any such motion or any post-trial hearing. Appellant has cited nothing to this Court in the record to support his allegations the prosecution withheld favorable evidence.[2] He has therefore waived consideration of this on appeal. *Johnson v. State*, 665 P.2d 815, 819 (Okl.Cr.1982).

██ There is no fundamental error. Of the twenty (20) incidents listed on the State's notice, eleven (11) victims testified. Of those 11, eight testified their assailant was black; one (1) testified he was "dark"; and only two (2) gave no indication one way or the other. Of the three who testified the assailant was dark, Appellant cross-examined only one of them in any fashion; and that cross-examination pertained to a different subject. He did not cross-examine any of the other witnesses at all, even though he admits on appeal he was aware none of the victims would be able to identify him as their attacker. *See also* Tr. 418, where counsel indicated he believed there would be testimony the witnesses could not identify their attacker. Appellant had the opportunity to cross-examine these witnesses and chose not to do so. He cannot be allowed to take advantage of that strategy on appeal because it did not work to his benefit at trial.

██ We likewise find no fundamental error involving the nine (9) victims who did not testify at trial. This Court has held that unadjudicated acts can be used to prove the defendant is a continuing threat to society.

*Walker v. State*, 723 P.2d 273, 285 (Okl.Cr. 1986), *cert. denied*, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 600 (1986); *Johnson v. State*, 665 P.2d 815, 822–23 (Okl.Cr.1982). Implicit in this holding is that the State must prove beyond a reasonable doubt a defendant is a continuing threat to society, but it need not completely try its case on the other crimes the defendant may have committed which serve as a basis for that finding. It is the evidence of future dangerousness, not the crime itself, that is relevant for the jury's consideration. *See VanWoundenberg v. State*, 720 P.2d 328, 337 (Okl.Cr.1986), *cert. denied*, 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986) (citing *Jurek v. Texas*, 428 U.S. 262, 275–76, 96 S.Ct. 2950, 2957–58, 49 L.Ed.2d 929 (1976)). Here, Appellant himself gave a confession to police in which he admitted to the burglaries listed on the State's notice. The question then becomes whether corroboration of that confession should be required, even if the prosecution is not actually trying the defendant for the crimes to which he confessed.

It has long been the rule in this State that a conviction for a particular crime cannot be had upon a defendant's extrajudicial confession alone; rather, it is the duty of the prosecution to prove in some way the corpus delicti, independent of the defendant's confession. *Osborn v. State*, 86 Okl.Cr. 259, 194 P.2d 176, 180 (1948) (quoting *Choate v. State*, 12 Okl.Cr. 560, 160 P. 34, 35 (1916)). Circumstances giving rise to this requirement may not present themselves immediately to a rational person, but they do show why the requirement is nonetheless valid:

> The danger which the rule is supposed to guard against is greatly exaggerated in common thought. Yet there are rare instances of morbid minds that need to be protected by this rule against their own perversity and morbid imaginations.

*Id.*, 194 P.2d at 181. We see no reason to believe this "perversity and morbid imagination" present in other instances might not also be present in a defendant against whom

---

**2.** The record does not reflect it, but both Appellant and the State acknowledged in oral argument the District Attorney's office has an open-file policy which was in effect at the time Appellant was charged and tried. Appellant's counsel during trial also acknowledged the District Attorney's Office had cooperated with him in his discovery requests.

the death penalty is being sought. Therefore, even though the prosecution is not actually trying a capital murder defendant for the underlying crimes he is using as a basis for the aggravating circumstance of continuing threat, we feel the rationale behind the rule is sound.

Despite this requirement, we find no fundamental error in the prosecution's failing to corroborate all of Appellant's confession here. While the remaining victims themselves did not testify, three police officers testified they received calls to go to three addresses, and took reports from victims who complained certain crimes took place. That can be viewed as cumulative evidence helping to establish the corpus delicti of those three instances to which Appellant confessed. Of the six instances where the confession was not corroborated to some degree, we find no fundamental error, in light of the overwhelming evidence presented in the other instances. Whether Appellant committed 20, 14, or 11 additional robberies or burglaries, there was ample evidence to convince a jury in the light most favorable to the prosecution the probability existed Appellant would commit criminal acts of violence that would constitute a continuing threat to society. Any error occurring here was harmless beyond a reasonable doubt; and presentation of the evidence he now alleges exists but was withheld would not have undermined confidence in the jury's sentence. *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Lay v. State*, 752 P.2d 823, 826 (Okl. Cr.1988);

In a related proposition, Appellant complains he was denied his right to confront the witnesses against him. When the prosecution announced some witnesses would not be called, the trial court allowed police officers to testify. Although he claims on appeal five (5) officers testified in such a manner, he does not cite to this Court where their testimony is found. This Court has found testimony from three officers: Officer Corey, who testified that on December 22, 1987, he responded to a call at 913 N.W. 24th St. in Oklahoma City, and took a report of first

degree burglary (Tr. 464); Officer Johnson, who testified he responded to 1109 N.W. 47th St. in Oklahoma City, on October 31, 1987, where he took a report of first degree burglary and rape (Tr. 468–69); and Officer Wade, who testified that on December 27, 1987, he took a report of a residential robbery at 1419 N.W. 29th St. in Oklahoma City (Tr. 470–71). No details of the alleged offenses were presented in any of this testimony.

Appellant claims the officers' testimony was inadmissible hearsay. We disagree. "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." 12 O.S.1981, § 2801(3). Here, the officers did not offer their testimony to prove Appellant committed the crimes of burglary or rape; they offered their testimony to show they responded to certain locations and took reports. As such, it did not tend to prove the truth of the matter asserted—*i.e.*, that the crimes of rape or burglary took place. The prosecution offered the testimony to corroborate Appellant's confession to certain crimes by showing that there were crimes reported. *See Stafford v. State*, 665 P.2d 1205, 1216–17 (Okl.Cr.1983), *vacated on other grounds*, 467 U.S. 1212, 104 S.Ct. 2651, 81 L.Ed.2d 359 (1984); *Nunley v. State*, 660 P.2d 1052, 1055 (Okl.Cr.1983), *cert. denied*, 464 U.S. 867, 104 S.Ct. 205, 78 L.Ed.2d 179 (1983).

Since the statements were not offered to prove a rape or burglaries but were merely made to prove statements were made, we see no violation of the Confrontation Clauses of the Sixth Amendment to the United States Constitution or Art. II, § 20 of the Oklahoma Constitution. The Appellant had ample opportunity to cross-examine the officers concerning their taking of statements, and to ascertain circumstances surrounding the taking of the statements. *See Beck v. State*, 824 P.2d 385, 389 (Okl.Cr.1991).

However, Appellant's complaint does illustrate the confusion and potential harm that can arise when a defendant is put in a position of having to defend against

evidence that must be presented solely because the prosecutor is required to corroborate a confession. Therefore, a defendant could personally stipulate to the sole fact corroborating evidence exists as part of the trial strategy to preclude the admission of the underlying facts which corroborate the confession. *See Pickens v. State,* 850 P.2d 328, 337, 64 Okla.B.J. 1013, 1018 (Okl.Cr. March 25, 1993); *Brewer v. State,* 650 P.2d 54, 63 (Okl.Cr.1982). We make this statement mindful of the fact that the facts necessary to prove continuing threat are different than those necessary to prove a defendant was previously convicted of felonies involving the use or threat of violence to a person; and that relying on bare stipulations could result in erroneous findings of continuing threat. *Smith v. State,* 819 P.2d 270, 277 (Okl.Cr. 1991), *cert. denied* ── U.S. ──, 112 S.Ct. 2312, 119 L.Ed.2d 232 (1992). Therefore, in making this ruling we in no way intend to limit the prosecution's ability to prove the probability a defendant would commit criminal acts of violence that would constitute a continuing threat to society under § 701.-12(7); we simply state that, if a confession given freely and voluntarily by a defendant contains the evidence necessary to prove the existence of that aggravating circumstance, the State need not present other, cumulative evidence simply to corroborate the confession if the defendant personally agrees to waive the corroboration requirement and stipulates to the facts sought to be presented.

 Appellant also complains of evidence involving a rape of one victim. The prosecution alleged one victim who did not testify was also raped. The court initially allowed evidence in the Appellant's confession that he rubbed the victim's genitalia but did not penetrate her, together with the testimony of an officer who took an initial report from the victim that she had been burglarized and raped. The court then decided the evidence should be excluded, and admonished the jury accordingly. When improper evidence is met with an objection and the jury is admonished to disregard it, a mistrial is not justified. *Koehler v. State,* 721 P.2d 426, 427 (Okl.Cr.1986). This is so because an admonishment cures all but fundamental error. *Watkins v. State,* 702 P.2d 1045, 1046 (Okl.

Cr.1985). Were error present here, it would not rise to that level in light of the otherwise overwhelming evidence supporting this aggravating circumstance.

 Appellant also complains he had no indication one of the witnesses had told officers her throat was cut during a fall, and not by her attacker's actions. The record does not support this allegation. Appellant's attorney on cross-examination asked the witness, Mrs. Dufford, whether she had earlier told anyone she had cut herself when she fell down the back steps in an effort to escape her attacker. Mrs. Dufford denied telling anyone that. There is no fundamental error here. Even if Appellant were to show that failure to turn over additional information was error, he has failed to show that the suppression of that evidence undermined confidence in the outcome of the trial. *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383; *Lay,* 752 P.2d at 826.

 In his third proposition of error, Appellant claims the trial court erred in allowing the jury to watch exhibit 39, a video cassette recording of Appellant confessing numerous instances of burglary and one instance of a sexual attack. The State used the tape—containing confessions to 20 burglaries and robberies—in support of its allegation Appellant would constitute a continuing threat to society. Appellant made the taped confession as part of a package deal not related to the murder, in which he would be charged with only a couple of the 20 offenses. He does not contest that the confessions were freely and voluntarily given. Rather, on appeal he specifically complains of the visual portion, during which Appellant occasionally laughed and made motions while relating his actions, claiming this was unduly prejudicial.

 The Legislature has determined that "[r]elevant evidence may be excluded if its probative value is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise." 12 O.S.1981, § 2403 (emphasis added). The

adverb "substantially" is of great importance, as its inclusion in the statute indicates the trial court "should resolve all doubts in favor of admitting the evidence." *Bear v. State,* 762 P.2d 950, 956 (Okl.Cr.1988). The party objecting to the admission of such relevant evidence has the burden of rebutting this presumption of admissibility. *Id.*

Here, Appellant complains his demeanor while describing the acts on the tape was not relevant. We disagree. As stated above, Appellant was not being tried for the specific acts of burglary and rape represented on the tape; the evidence was being presented to allow the jury to determine the probability Appellant would conduct criminal acts of violence that would constitute a continuing threat to society. His actions and attitude toward his victims would be very probative on this issue. His demeanor showing no remorse for his actions—and in cases, even making light of his victims' fear—convey far better than mere words or audio tape this probability of his being a continuing threat.

Appellant claims in his brief that some portions of his videotaped confession were highly inflammatory and not relevant to the issue of continuing threat. We note the prosecution read into the record footage markings where portions of the tape were skipped, presenting only relevant portions to the jury. We reviewed the tape omitting those portions, and find the remainder to be highly probative, and not substantially outweighed by the danger of unfair prejudice. Appellant's attorney on cross-examination of the officer brought out the methodology used to obtain the confessions,[3] and we find the evidence was properly admitted to allow the jury to give the evidence whatever weight and credibility it deserves.

■ Appellant in his fifth proposition contends there was insufficient evidence to support the jury's finding he committed the murder to avoid arrest and prosecution. We disagree. We have held that such intent can be gathered from circumstantial evidence surrounding the crime. *Williamson v. State,*

812 P.2d 384, 406–07 (Okl.Cr.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1592, 118 L.Ed.2d 308 (1992). Here, Appellant lived only a few houses away from the decedent, and admitted to officers he had known her since he was a child. At the scene itself, authorities found a trail of blood from the decedent's living room to the bathroom. Appellant told authorities he took the decedent to the bathroom, then after stabbing her again in the front of the house, placed the knife she had been carrying on a counter and turned off a pot of boiling water in an attempt to frustrate attempts to determine when the burglary and resulting death occurred. When viewed in the light most favorable to the prosecution, we hold all this evidence supports the jury's finding of this aggravating circumstance. *Id. See also Fowler v. State,* 779 P.2d 580, 588 (Okl.Cr. 1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1537, 108 L.Ed.2d 775 (1990); *Fox v. State,* 779 P.2d 562, 576 (Okl.Cr.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990). There is no merit to this contention.

■ Appellant last claims that even if none of his individual assignments of error have merit, an accumulation of error warrants reversal. We disagree. The errors we found during the first stage of the trial involving improper comments did not affect the outcome of the trial or deprive Appellant of any substantial right; and the isolated instance of improper comment in the second stage could not have had any bearing whatever on the jury's determination Appellant should receive the death sentence. *See Hope v. State,* 732 P.2d 905, 908 (Okl.Cr.1987).

### III. MANDATORY SENTENCE REVIEW

■ This Court is required by 21 O.S. 1991, § 701.13(C) to determine whether (1) the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of aggrava-

---

**3.** Appellant complains on appeal the officer, whose face could not be seen on the tape, encouraged him to act out portions of the crimes and assume the cavalier attitude he had during the statement. He also complained the officers further gained his confidence by providing him with hamburgers before the confession was taped.

ting circumstances as enumerated in 21 O.S. 1981, § 701.12. As noted above, we find sufficient evidence presented to support the jury's finding that Appellant committed the murder to avoid arrest and prosecution under § 701.12(5). We also find sufficient evidence to show the Appellant was previously convicted of a felony involving the use or threat of violence to the person under § 701.-12(1). Evidence showed Appellant was convicted of robbery with firearms in 1975.

■ We also find sufficient evidence to support the jury's determination that there was a probability Appellant would commit criminal acts of violence that would constitute a continuing threat to society under § 701.-12(7). Defendant acknowledged twenty (20) instances of burglary in his videotaped confession, all but six of which were supported by corroboration of either the victims or police officers at his trial.

■ We do feel compelled to address one point not raised in the briefs, if only to show no reversible error occurred. Appellant in the videotape confessed to a burglary at 4412 N. Military in Oklahoma City. The confession was corroborated at trial by testimony from the occupant of the residence, Mrs. Helen J. Smith. In his opening statement beginning the second stage of the trial, the prosecutor referred to this incident along with the others. However, this Court is unable to find in the prosecution's notice of evidence in aggravation where that specific incident is listed. Consequently, admission of that particular burglary does not comply with the requirements of 21 O.S.Supp.1987, § 701.10.

■ Despite this, we see no fundamental error. We first note Appellant did not object to the introduction of that evidence at any time during the proceedings, and has thus waived it for consideration on appeal. *Williamson v. State*, 812 P.2d 384, 408 (Okl.Cr.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1592, 118 L.Ed.2d 308 (1992). We further notice Mrs. Smith is listed as a witness on the prosecution's list of witnesses to be called to present aggravating circumstances; therefore, there is no constitutional error. *See* Okla. Const. art II, § 20. Nor do

we find violation of the statute to warrant vacation of Appellant's death sentence in this instance, in light of the fact the Appellant himself confessed to that specific act—and therefore knew of its existence—and the great amount of evidence presented in support of this aggravating circumstance. 20 O.S.1991, § 3001.1.

■ Appellant presented mitigating evidence showing he had no relationship with his natural father; his adoptive father died at an early age; his stepfather abused him; he left home at age 11 and fended for himself; he did not have the benefit of his mother's guidance due to family economic circumstances; he assumed responsibility for being "man of the family"; he worked and contributed money for support of his family; he helped care for both his own children and his wife's children from a former marriage; he maintained a loving relationship with his mother and siblings; he spent many of his formative years in state institutions; he would take punishment for things his siblings or others did; and he at one time intervened to save the life of his suicidal sister-in-law, telling her "life is too precious to die."

Reviewing the evidence in mitigation and aggravation, we find the sentence of death to be factually substantiated and appropriate.

Finding no error warranting reversal or modification, the judgments and sentences for Murder in the First Degree and Burglary in the First Degree, After Former Conviction of Two or More Felonies, are AFFIRMED.

JOHNSON, V.P.J., and LANE, J., concur.

CHAPEL, J., concurs in results.